1
2
3
4
5

Troy P. Foster
Megan Weides
**The Foster Group, PLLC**
518 East Willetta Street
Phoenix, Arizona 85004
Tel: 602-461-7990
tfoster@thefosterlaw.com
*Attorneys for Plaintiff*

6

## IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8
9
10

Jason Heffington, a married man, on behalf of himself and similarly-situated Arizona Department of Correction employees,

11

Plaintiff,

12

vs.

13
14
15
16
17
18
19
20

The Arizona Department of Corrections, David Shinn, Director of the Arizona Department of Corrections, in his official capacity; Charles Ryan, former Director of the Arizona Department of Corrections, in his official capacity and personally, John Hall, in his official capacity and personally; Gerald Thompson, in his official capacity and personally; and Wendy Eckles, in her official capacity and personally,

21

Defendants.

Case No.:

**COMPLAINT**

**(Jury Trial Demanded)**

22
23
24

For his Complaint against Defendants Arizona Department of Corrections ("DOC"), Director David Shinn, former Director Charles Ryan, Gerald Thompson, John Hall, and Eckles ("Individual Defendants") (collectively referred to as "Defendants"), Plaintiff Jason Heffington ("Plaintiff" or "Class Representative") alleges as follows:

25

1

**The Parties and Jurisdiction**

1.      At all times relevant to this Complaint, Plaintiff resided in and is a citizen of Arizona.

2.      At all times relevant to this Complaint, Plaintiff worked for the DOC.

3.      The DOC is an agency of the State of Arizona.

4.      In October 2019, Defendant Shinn became the Director of the DOC.

5.      Prior to Defendant Shinn's appointment, Defendant Ryan was the Director of the DOC.

6.      At all times relevant to this Complaint, Defendant Thompson was the Warden at the DOC's Lewis prison ("Lewis").

7.      At all times relevant to this Complaint, Defendant Hall was a sergeant at the DOC's Lewis prison.

8.      At all times relevant to this Complaint, Defendant Eckles was the Deputy Warden at the DOC's Perryville prison ("Perryville").

9.      Upon information and belief, all of the Individual Defendants are residents and citizens of Arizona.

10.     The Individual Defendants, as well as other yet unnamed managers, exercise managerial responsibility and substantial control over the terms and work conditions of the DOC's employees, including Plaintiff.  Among other things, the Individual Defendants are individually and jointly authorized to hire, fire, discipline, supervise and control employee work schedules and conditions of employment, determine the rate and method of payment, administer leaves of absence, maintain employment records that may exist, and draft, implement, and enforce employee policies.

11.     All allegations in the Complaint took place within the DOC facilities.

12.     This Court has original jurisdiction because Plaintiff's claims raise federal questions pursuant to 28 U.S.C. § 1331.

13.     Venue is properly before this Court.

**Officer Heffington's Application, Hire, Assignments, and Concerns Raised**

14.     Plaintiff has been employed with the DOC for almost 14 years as a correctional officer.

15.     Plaintiff originally applied for an assignment to the Perryville prison.

16.     Plaintiff applied for the Perryville location because he believed that it was a safer facility to work in given the respective inmate populations.

17.     Plaintiff expressly did not want to work in the Lewis prison because Plaintiff believed that there were significant safety issues for correctional officers that worked there.

18.     Plaintiff was offered and accepted a position with the DOC at the Perryville facility.

19.     Plaintiff remained at the Perryville facility until May 2019.

20.     Plaintiff was transferred to the Lewis prison subsequent to engaging in protected activity outlined below.

21.     At the time of his transfer, Plaintiff raised safety concerns about the Lewis prison.

22.     Specifically, Plaintiff informed the DOC and DOC management, including Defendants Ryan and Eckles that he believed that conditions at Lewis were unsafe to work in.

23.     Plaintiff informed the DOC and DOC management, including Defendants Ryan and Eckles that other employees were concerned about the safety of the work conditions at Lewis.

24.     Plaintiff informed the DOC and DOC management, including Defendants Ryan and Eckles that he believed that his transfer was in retaliation for raising matters of public concern and engaging in other protected activity.

**Family Medical Leave Act:  "Granted" But Thwarted**

25.     Prior to his transfer, Plaintiff was eligible and qualified for intermittent leave under the Family Medical Leave Act ("FMLA") for self care ("self-care leave").

26.     Prior to his transfer, Plaintiff was eligible and qualified for FMLA leave to care for his wife and the birth of his newborn child ("family leave").

27.     The DOC granted both of Plaintiff's self-care and family leaves.

28.     When he attempted to utilize the self-care leave, Plaintiff's supervisors objected.

29.     In March 2018, Plaintiff attempted to utilize his self-care leave.

30.     On that occasion, his supervisor, Sergeant Reyes, denied Plaintiff's request and informed Plaintiff that he could not utilize the leave.

31.     The following day, Defendant Eckles met with Plaintiff about his request to use approved FMLA leave the previous day.

32.     During that meeting, the Deputy Warden told Plaintiff that she did not believe that he needed to utilize his approved leave.

33.     In fact, Defendant Eckles asked Plaintiff to "convince her" that he needed the leave.

34.     On another occasion, Plaintiff's supervisor, Sergeant Miller, wrote an incident report because Plaintiff utilized FMLA leave.

35.     In that report, Sergeant Miller objected to Plaintiff's use of the approved leave and required Plaintiff to write a report justifying the need for FMLA leave.

36.     Sergeant Miller told Plaintiff that the DOC and his managers were "keeping a paper trail" on him because his leave was "bullshit."

37.     Subsequent to his use and attempted use of leave, and immediately prior to his transfer to Lewis, Plaintiff's managers said that they needed to "get rid of him" because of his leave.

**A Long-Standing Custom and Practice:  Interference, Denial, and Retaliation**

38.     As a result, Plaintiff did not utilize his approved leave at times that he needed to, and was entitled to, take leave.

39.     Plaintiff objected to his supervisors' and managers' interference with his FMLA leave.

40. Plaintiff objected to his supervisors' and managers' retaliation for taking protected leave.

41. Plaintiff observed other employees that, upon information and belief, had protected FMLA leave treated in a similar manner.

42. Plaintiff witnessed conversations where DOC managers made disparaging comments about other employees' protected leave and saw interference with and retaliation for those employees' leave.

43. In fact, Plaintiff raised concerns with his managers and supervisors, including the Individual Defendants, about how the DOC administered FMLA leaves to all of its employees.

44. Plaintiff attempted to inform the Defendants that its interference with and administration of FMLA to all of its employees violated federal law.

45. Based upon his personal experience and observations at two DOC facilities, Plaintiff believes that the DOC has a longstanding practice and custom to deny and retaliate against employees that are eligible for FMLA leave.

### Familial Leave Retaliation

46. In March 2018, Plaintiff informed the DOC and his managers that he and his wife were expecting the birth of their first child.

47. As such, Plaintiff applied for prospective leave to take care of his wife and child after the baby was born.

48. The DOC granted Plaintiff's leave.

49. Subsequent to the leave being granted, but before utilizing the leave, Plaintiff's supervisors retaliated against him.

50. Plaintiff was wrongfully accused of misconduct and transferred to Lewis.

51. Plaintiff complained about his mistreatment, both in writing and in person.

52. Plaintiff again raised concerns that the DOC was not administering leave in accordance with the law and its own policies and procedures.

53.     Because of his familial leave, Plaintiff was targeted, wrongfully disciplined, and transferred.  In addition, and as a result, Plaintiff was denied bonuses that others that had not taken protected leave received.

**Smoking Him Out**

54.     After his transfer to Lewis, Plaintiff raised safety concerns to DOC officials.

55.     One such concern related to prisoners being permitted to smoke in the facility.

56.     Upon information and belief, DOC policy prohibits prisoners from smoking inside the facility.

57.     Prisoners, however, smoked, and continue to smoke, inside the facility.

58.     This resulted in significant second-hand smoke that impacted not only the employees' health, but their ability to perceive and respond to risk.

59.     Several employees shared their concerns with Plaintiff.

60.     Plaintiff shared these concerns with the DOC, including Defendant Thompson.

61.     This workplace safety issue was a matter of public concern.

62.     Plaintiff told Defendant Thompson that he did not want to cause problems, but wanted to raise issues – both concerning his personal FMLA issues and the safety issues of general public concern.

63.     Defendant Thompson responded that Plaintiff *was causing problems* by being "here" [in his office].

64.     Defendant Thompson further stated that no one could take Plaintiff's concerns seriously because "you are so frail."

65.     Defendant Thompson then mocked Plaintiff for being jittery.

66.     Plaintiff complained about Defendant Thompson's behavior to Human Resources.

67.     Upon information and belief, action was taken against Defendant Thompson for this incident.

68.     Subsequently, and as a result of this, Plaintiff was retaliated against for leaving work due to illness.

69.     In December 2019, Plaintiff informed his supervisor that he needed relief.

70.     Plaintiff's supervisor granted the request and relieved him from duty.

71.     However, on Plaintiff's way out of the facility, Defendant Hall stopped Plaintiff and asked "are you the one with FMLA issues?"

72.     Plaintiff responded that he had been relieved, but declined to discuss his FMLA leave further.

73.     Two weeks later, Plaintiff received a Notice of Investigation into his departure on that day.

74.     The Notice is factually inaccurate; Plaintiff believes that inaccuracies were deliberately created in retaliation for his protected activities.

75.     Plaintiff was informed that Defendant Thompson authorized the investigation.

76.     Prior to his complaint to HR, Defendant Thompson told Plaintiff that should he have any issues with utilizing leave to contact him.

77.     Plaintiff was disciplined in January 2020 for this incident.

78.     Plaintiff believes that the investigation was in retaliation for taking prior protected leave and raising matters of public concern.

**Other Public Concerns:  Working for Free**

79.     Plaintiff also raised concerns that correctional officers were not being paid as required under the Fair Labor Standards Act ("FLSA").

80.     Specifically, Plaintiff and other employees, were required to spend a significant amount of time walking to the facility, going through security, and completing other tasks before being paid.

81.     Further, Plaintiff and other employees, were required to spend a significant amount of time performing duties and being available for recall while off the clock at the end of their shifts all without being paid.

1      82.    On several occasions since June 2019, Plaintiff raised these concerns with the

2  DOC.

3      83.    Plaintiff believes that he was retaliated against, in part, for raising these

4  matters of concern.

**Collective Action Allegations**

5      84.    Plaintiff brings this lawsuit as a "collective action" under 29 U.S.C. § 216(b)

6  of the Act because, as discussed in this Complaint, the DOC's employees are similarly

7  situated.

8      85.    As such, Plaintiff brings this lawsuit on behalf of himself and on behalf of the

9  current employees and former employees of the DOC ("Class Members").

10      86.    The Class is initially defined as:  any current or former employee of the DOC,

11  engaged as a correctional officer, that was eligible for FMLA from January 15, 2017 to

12  January 15, 2020.

13      87.    The number of Class Members is so numerous that joinder of all individuals

14  into a single complaint would be impractical.  Though the exact number of Class Members

15  is unknown and in complete control of the DOC, based upon Plaintiff's tenure and

16  observation of turnover at two facilities, it is reasonable to believe that there are over 800

17  Class Members.  The Class Members are readily identifiable from the DOC's employment

18  and payroll records.

19      88.    There are questions of law and fact common to all Class Members.  These

20  common questions include, but are not limited to:

    a.  Was the Class Member eligible for protected leave under the FMLA?

21      b.  Did the DOC, or its officials, deny, interfere with, or retaliate against eligible

22          Class Members for applying for or utilizing protected leave under the FMLA?

23      89. Plaintiff's claims are typical of all other Class Members.  Plaintiff, like all other

24          Class Members, are correctional officers that were eligible for protected leave.

25      90. The opt-in questionnaire will properly limit the Class Members to those that had a

        qualifying condition and covered by the Act.

91. Plaintiff will fairly and adequately represent the Class Members. Plaintiff is a current employee, has been employed with the DOC during the entire Violative Period, and qualified for and took both familial and self-care leave under the FMLA. Plaintiff has retained competent counsel who has experience in litigating collective and class action matters that involve federal employment claims. As such, the Class Members' claims will be fairly and adequately represented by Plaintiff and counsel.

92. A collective action is superior to other available methods for adjudicating claims effectively and efficiently. The adjudication through a collective action will avoid potentially inconsistent and conflicting results of the asserted claim for the correctional officers that opt in. There will be no difficulty in managing the Class, and a single adjudication of the claim will substantially benefit the Class Members and the Court. Damages for individual Class Members are likely inadequate to justify the cost of individual litigation especially in light of the fact that Class Members are/were non-exempt employees with relatively lower income and had/have serious medical conditions. As such, absent a collective action or something similar, the DOC's willful violations of law inflicting significant damages in the aggregate would go unremedied.

93. A collective action is also appropriate under 29 U.S.C. § 216(b) because the DOC has acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive or declaratory relief is appropriate to the Class as a whole.

**LEGAL CLAIMS**
**Count One: FMLA Self-Care (Interference and Retaliation) (All Defendants)**
**(Injunctive Relief)**

94. Plaintiff reincorporates the allegations in paragraphs 1-93 as if fully set forth here.

95. At all relevant times, the DOC had more than 50 employees.

96. At all relevant times, the DOC was an employer for purposes of the FMLA.

97.     At all relevant times, Plaintiff had been employed with the DOC for more than one year and worked a sufficient amount of time as required by the FMLA.

98.     At all relevant times, Plaintiff was eligible for leave under the FMLA.

99.     Plaintiff had serious medical conditions that entitled him to leave under the FMLA.

100.    The DOC granted Plaintiff's intermittent leave requests for self-care on multiple occasions.

101.    Despite its policy to the contrary, the DOC (through its officials) had a longstanding practice and custom of interfering with Plaintiff's, and similarly-situated correctional officers', right to take protected leave.

102.    Despite its policy to the contrary, the DOC (through its officials) had a longstanding practice and custom of retaliating against Plaintiff, and similarly-situated correctional officers, for exercising the right to protected leave.

103.    The DOC failed to train or take other adequate safeguards to prevent its managers and supervisors from violating Plaintiff's, and similarly-situated correctional officers', rights under the FMLA.

104.    Plaintiff is entitled to injunctive relief on behalf of himself and all similarly-situated DOC employees.

**Count Two:  FMLA Familial Leave (Retaliation) (All Defendants) (Monetary Relief)**

105.    Plaintiff reincorporates allegations in paragraphs 1-104 as if full set forth here.

106.    Plaintiff was provided, and took, FMLA "family leave" for the birth of his child and to take care of his wife.

107.    After he applied for the leave, but before he took it, the Defendants retaliated against him because of his protected family leave.

108.    When Plaintiff returned from protected leave, the Defendants retaliated against him because of the leave.

109.    As a result of the retaliation and pretextual discipline, Plaintiff was deprived of promotional opportunities, bonuses, and additional wages.

110.    Plaintiff is entitled to back pay, front pay, liquidated damages, and his reasonable attorneys' fees and costs.

### Count Three:  First and Fourteenth Amendment Violations (§ 1983) (Against Defendants Shinn, Ryan, Thompson, and Eckles)

111.    Plaintiff reincorporates allegations in paragraphs 1-110 as if fully set forth here.

112.    At all relevant times, Directors Shinn and Ryan were acting under color of State law, in their respective times of service.

113.    At all relevant times, Warden Thompson was acting under color of State law.

114.    At all relevant times, Deputy Warden Eckles was acting under color of State law.

115.    As the highest ranking official during each's respective tenure, Defendants Shinn and Ryan were the highest-ranking officials of the DOC at various times during the relevant allegations.

116.    In his role, Warden Thompson was the highest-ranking official supervising Plaintiff at the Lewis facility.

117.    Moreover, Defendant Thompson had the authority to direct and oversee, and did direct and oversee, Plaintiff's work conditions at Lewis.

118.    In her role, Deputy Warden Eckles had the authority to direct and oversee, and did direct and oversee, Plaintiff's work conditions at Perryville.

119.    In their respective roles, Defendants Shinn, Ryan, Thompson, and Eckles were charged with ensuring the workplace was free from adverse actions for the proper exercise of speech, the violation of which infringes upon an employee's First Amendment rights under the United States Constitution.

120.    In their respective roles, Defendants Shinn, Ryan, Thompson, and Eckles were charged with ensuring the workplace was free from adverse actions for the proper

exercise of federally protected rights and Due Process and Equal Protection for utilizing those rights.

121.    Plaintiff's complaints concerned his good faith belief that the DOC was violating the FMLA and FLSA as to all of all similarly-situated corrections officers.

122.    In addition, Plaintiff's complaints concerned his good faith belief that the DOC's work conditions at Lewis were unsafe and violated similarly-situated corrections' officers rights.

123.    Plaintiff's complaints raised matters of public concern.

124.    Plaintiff had the right to voice matters of public concern, as protected by his First Amendment rights under the United States Constitution.

125.    The DOC had a longstanding practice or custom of interfering with correctional officers' rights to take protected leave.

126.    Similarly, the DOC had a longstanding practice or custom of retaliating against correctional officers that took protected leave.

127.    The DOC failed to adequately train its managers and supervisors so as to implement procedural safeguards to prevent Constitutional violations.

128.    This longstanding practice and custom violated Plaintiff's, and similarly-situated correctional officers', rights to Equal Protection and Due Process as guaranteed by the United States Constitution.

129.    All of Plaintiff's rights, as articulated above, are clearly established and recognized.

130.    Defendants Shinn, Ryan, Thompson, and Eckles all abused their respective positions given to them by the government while acting under the color of State law.

## Conclusion

**THEREFORE**, Plaintiff respectfully requests the following relief:

A.  An award of back pay, front pay, and liquidated damages for Defendants' violations of the FMLA "family care" provisions;

B.  Equitable relief against Defendants for its practice and custom of violating the FMLA's "self care" provisions by denying, interfering with, and retaliating against eligible employees for applying for, taking, or attempting to take such protected leave;

C.  Compensatory and punitive damages for the Individual Defendants' violations of civil rights pursuant to § 1983;

D.  An award of attorneys' fees and costs based upon the applicable provisions of federal and state law; and

E.  All other appropriate injunctive and equitable relief.

Dated this 14th day of January, 2020.

**The Foster Group, PLLC**

*/s/ Troy P. Foster*
Troy P. Foster
Megan Weides
518 East Willetta Street
Phoenix, Arizona 85004
*Counsel for Plaintiff*